```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/24/07
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA              :

        - against -                   :

DIEGO RODRIGUEZ,                      :

             Defendant.               :

- - - - - - - - - - - - - - - - - - -x

                                          **MEMORANDUM DECISION**

                                          06 Civ. 10217 (DC)
                                          03 Cr. 1122 (DC)

**APPEARANCES:**     MICHAEL J. GARCIA, ESQ.
                United States Attorney for the
                Southern District of New York
                     By:   Jacob W. Buchdahl, Esq.
                           Assistant United States Attorney
                One Saint Andrew's Plaza
                New York, New York  10007

                Diego Rodriguez
                Defendant Pro Se
                FCC Coleman Low
                P.O. Box 1031
                Coleman, Florida  33521

**CHIN, D.J.**

        Defendant Diego Rodriguez, a/k/a "Alvaro Ayala," pled
guilty to one count of conspiracy to distribute and possess with
intent to distribute at least 3 kilograms of heroin.  He was
sentenced to a term of imprisonment of 90 months.  Now proceeding
pro se, Rodriguez moves pursuant to 28 U.S.C. § 2255 to vacate,
set aside, or correct his sentence on the grounds that: (1) the
Court failed to determine the exact quantity of drugs
attributable to him prior to his guilty plea; (2) the Court
violated Apprendi by depriving defendant of his right to have a
jury determine the drug quantity attributable to him beyond a
reasonable doubt; (3) the Court erroneously sentenced him using a
guidelines range based on the stipulated offense as opposed to

the charged offense; and (4) he was denied effective assistance of counsel.  For the reasons set forth below, the motion is denied.[1]

**BACKGROUND**

## A.  The Facts

On or about July 23, 2003, a cooperating witness ("CW") working with the Tampa, Florida Police Department advised law enforcement officers that an individual named Nelson Castillo would be able to provide heroin.  (PSR 4).[2]  In the following days, Castillo and the CW engaged in numerous conversations, and the CW learned that heroin was coming in from Miami on July 30th.  (Id.).  Castillo told the CW that the shipment would be for approximately 300 grams, and that Castillo would pay $20,000 to get the drugs.  (Id.).

On July 30, 2003, Tampa police followed Castillo to the site of the transaction.  (Id.).  There, police officers saw Diego Rodriguez arrive and enter the premises.  (Id.).  Castillo

---

[1]     Because I find that "it plainly appears from the face of the [section 2255] motion . . . and the prior proceedings in the case that [Rodriguez] is not entitled to relief," I do not order the United States Attorney to file an answer to the instant motion.  See Rules Governing Section 2255 Proceedings for the U.S. Dist. Courts 4(b); Armienti v. United States, 234 F.3d 820, 822-23 (2d Cir. 2000).

[2]     References are as follows: "Indict." to the superseding indictment dated August 31, 2004; "Plea Tr." to the transcript of Rodriguez's plea allocution; "PSR" to the pre-sentence report dated May 27, 2005; "Sent. Agmt." to Rodriguez's stipulated sentencing agreement dated October 18, 2005; "Sen. Tr." to the transcript of Rodriguez's sentencing; and "Def. Mot." to Rodriguez's § 2255 motion.

then phoned the CW and informed him that a Columbian (referring to Rodriguez) had arrived with 250 grams of heroin, and that he needed $20,000 to pay for the drugs. (<u>Id.</u>). Shortly thereafter, police arrested Castillo and a companion, and found that they were in possession of approximately 278 grams of heroin. (<u>Id.</u>). Rodriguez was also arrested, in possession of approximately $20,000 in cash. (<u>Id.</u>).

Rodriguez gave a detailed confession, stating that he provided two packs of heroin containing 15 pellets -- for a total of 250 grams -- to Castillo in exchange for $20,000. (<u>Id.</u> at 4-5). Rodriguez also stated that he provided the person accompanying Castillo with an additional three pellets of heroin. (<u>Id.</u> at 5).

B. **Prior Proceedings**

The original indictment was filed on September 18, 2003, and a superseding indictment was filed on August 31, 2004. The superseding indictment charged Rodriguez with conspiracy to distribute "1 kilogram and more, and with a total amount of at least 3 kilograms," of heroin in violation of 21 U.S.C. § 846. (Indict. 1).

On September 17, 2004, Rodriguez appeared before Magistrate Judge James C. Francis, and pled guilty without a plea agreement. (Plea Tr. 2). Rodriguez confirmed that he received a copy of the indictment, was provided with a translation, and understood what it said. (<u>Id.</u> at 3). He further confirmed that he understood the consequences of pleading guilty and was

entering his plea knowingly and voluntarily.  (Id. at 4-10).  The allocution included the following colloquy:

> THE COURT:    Do you understand that if you plead guilty there will be no trial of any kind and all of the trial related rights that I have described will no longer be available and the only remaining step would be for the Court to sentence you?
>
> DEFENDANT:    Yes, sir.
>
> THE COURT:    Do you understand the nature of the charge to which you are pleading?
>
> DEFENDANT:    Yes, sir.
>
> . . . .
>
> THE COURT:    Do you also understand that after it's been determined what guideline applies to the case the Court has the authority in some circumstances to impose a sentence that is more severe or less severe than that called for by the guidelines?
>
> DEFENDANT:    Yes, sir.
>
> . . . .
>
> THE COURT:    Do you still wish to plead guilty?
>
> DEFENDANT:    Yes, sir.
>
> THE COURT:    Have any threats been made to you by anyone influencing you to plead guilty?
>
> DEFENDANT:    No, sir.

(Id. at 6-8).

Following the plea allocution, the Probation Department prepared a presentence report ("PSR") containing a calculation of the appropriate sentence under the sentencing guidelines.  The PSR set the total offense level at 31, the criminal history

- 4 -

category at I, and the guidelines sentencing range at 120 to 135 months. (PSR 15). The Probation Department recommended a prison term of 120 months. (Id.). The parties did not file any objections to the PSR. (Id. at 14; Sent. Tr. 7).

By letter dated October 18, 2005, Rodriguez entered into a sentencing agreement with the Government. The sentencing agreement acknowledged that Rodriguez had pled guilty to a one-count indictment charging him with violating 21 U.S.C. § 846, in connection with his participation in a conspiracy to distribute at least 3 kilograms of heroin. (Sent. Agmt. 1). Rodriguez and the Government stipulated to a total offense level of 29 -- based on the assumption that the defendant would continue to accept responsibility for the charge and in consideration of his timely notice to plead guilty. (Id. at 2). They also stipulated to a criminal history category of I and a guidelines range of 87 to 108 months. (Id.). Although 21 U.S.C. § 841(b)(1)(A) imposes a mandatory minimum term of at least 120 months, the parties agreed that Rodriguez met the conditions of the safety valve, as set forth in 18 U.S.C. § 3553(f), providing relief from the statutory minimum. (Id.).

The sentencing agreement also contained a waiver of Rodriguez's right to appeal or otherwise litigate under 28 U.S.C. §§ 2255 and/or 2241 any sentence within or below the stipulated guidelines range. (Id. at 4).

At sentencing on October 31, 2005, I conducted a further allocution, confirming that Rodriguez entered into the

- 5 -

sentencing agreement knowingly, intelligently, and voluntarily.
(Sen. Tr. 4, 6-7). Specifically, Rodriguez acknowledged that he
understood he was waiving his right to appeal or challenge any
sentence within the stipulated range. (Id.). I also asked
whether he understood that the conspiracy involved between 3 and
10 kilograms, and Rodriguez answered in the affirmative. An
interpreter even asked that I repeat the amount at defendant's
request -- which I did accordingly.

> THE COURT:          It says that you will not be further
>                     prosecuted criminally for conspiracy to
>                     distribute and possess with intent to
>                     distribute between 3 and 10 kilograms of
>                     heroin from in or about 2000 through
>                     July --
>
> INTERPRETER:        Your Honor, with all due respect, the
>                     interpreter requests that the amounts be
>                     repeated.
>
> THE COURT:          Yes. For conspiracy to distribute and
>                     possess with intent to distribute
>                     between 3 and 10 kilograms of heroin,
>                     from in or about 2000 through in or
>                     about July 2003.
>
>                     . . . .
>
> THE COURT:          Do you understand all of that?
>
> DEFENDANT:          Yes, sir.
>
> THE COURT:          Is that consistent with your
>                     understanding of the agreement that you
>                     entered into with the government as
>                     explained to you by your lawyer?
>
> DEFENDANT:          Yes, sir.

(Id. at 5-6). Rodriguez's attorney urged the Court to impose a
sentence at the lower end of the guidelines range. (Id. at 8).

I accepted and adopted the sentencing agreement's guidelines calculation as to the total offense level, criminal history category, and guidelines range. (<u>Id.</u> at 7-8). I sentenced Rodriguez to 90 months imprisonment. (<u>Id.</u> at 12). I also imposed a term of supervised release of five years and a special assessment of $100. (<u>Id.</u>).

Rodriguez did not appeal. On October 23, 2006, Rodriguez filed this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.

<u>**DISCUSSION**</u>

The motion is denied. First, Rodriguez waived his right to challenge his sentence. Second, even assuming that Rodriguez did not waive his right to challenge his sentence, the motion is without merit.

## A.   <u>**Waiver of Rights**</u>

In the sentencing agreement, Rodriguez explicitly agreed that he would "not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range." (Sent. Agmt. 4). The Second Circuit has held such waivers in plea agreements enforceable:

> In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir.
1993); see also United States v. Djelevic, 161 F.3d 104, 106-07
(2d Cir. 1998) (knowing and voluntary waiver of right to appeal
sentence within agreed upon guideline range is enforceable).
Although the sentencing agreement here was entered into after
Rodriguez pled guilty, he still received benefits under the
agreement -- his guidelines range went from 120 to 135 months to
87 to 108 months -- and the agreement is enforceable.

Rodriguez's motion is denied because he waived his
right to appeal or otherwise challenge his sentence.  First, I
conducted a thorough allocution, and specifically asked Rodriguez
whether he understood that he was giving up his right to appeal
or in any other way litigate his sentence if it fell within the
range set forth in the sentencing agreement -- and Rodriguez
responded affirmatively.  (Sen. Tr. 6-7).  Second, Rodriguez
confirmed that (1) he discussed the sentencing agreement with his
attorney, (2) the sentencing agreement had been explained to him
and he fully understood it before signing it, and (3) he had not
been induced or threatened in any way to enter into the
agreement.  (Id. at 4, 6-7).  Third, as discussed below,
Rodriguez's ineffective assistance of counsel claim is without
merit.  Thus, the sentencing agreement is valid.

Accordingly, because I sentenced Rodriguez within the
stipulated range of 87 to 108 months, he has waived his right to
challenge his sentence and is precluded from making this motion.

**B.**    **The Merits**

Although Rodriguez waived his right to appeal his sentence, I nevertheless discuss the merits of his arguments. Rodriguez argues that: (1) the Court erred when it failed to determine the exact quantity of drugs attributable to him prior to his guilty plea; (2) the Court violated <u>Apprendi</u> by depriving him of his right to have a jury determine the drug quantity attributable to him beyond a reasonable doubt; (3) the Court erroneously sentenced him within a guidelines range based on the stipulated offense as opposed to the charged offense; and (4) he was denied effective assistance of counsel.  I address each claim in turn.

**1.**    **Failure to Determine Drug Quantity**

Rodriguez claims that his plea was made unknowingly and involuntarily because the drug quantity attributable to him was not determined until after he pled guilty.  While the superseding indictment charged that defendant was involved in a conspiracy to distribute and possess with intent to distribute "1 kilogram and more, and with a total amount of at least 3 kilograms," defendant's sentencing agreement ultimately provided that the amount was between "3 and 10 kilograms" of heroin.  (Indict. 1; Sent. Agmt. 1).  The crux of defendant's argument, then, is that he was not told prior to pleading guilty that he would be sentenced based on a quantity between "3 and 10 kilograms."

Defendant's argument is rejected for two reasons. First, although the amount attributable to defendant was not

established until later, defendant nevertheless knew that the
sentencing range for the alleged crime was from ten years to life
imprisonment.  Indeed, at the plea allocution, Magistrate Judge
Francis asked defendant the following:

> Now, I need to determine whether your plea is
> voluntary and whether you fully understand
> the charges against you and the possible
> consequences of your plea . . . . I remind
> you that the charge against you is,
> conspiracy to manufacture, distribute or
> dispense a controlled substance.  The law
> provides a penalty, a term of imprisonment
> with a mandatory minimum of ten years and
> maximum of life . . . . [D]o you understand
> those penalties?

(Plea Tr. 4).

Defendant responded in the affirmative.  (Id.).  Thus,
regardless of the drug amount ultimately used to calculate his
sentencing range, defendant knew the possible range of his
sentence at the time he pled guilty and was told he faced a
mandatory minimum of ten years.  Moreover, I sentenced defendant
to 90 months, below what he thought the minimum sentence would be
at the time he pled guilty.  It is true that a valid guilty plea
must "represent a voluntary and intelligent choice among the
alternative courses of action open to the defendant."  Ventura v.
Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992).  Here, however, the
record shows that defendant knew the possible consequences of his
plea -- including the sentencing range.

Second, defendant's argument is also rejected because
after his guilty plea, he entered into a sentencing agreement
that detailed the drug amount that would be used to calculate his

- 10 -

sentencing range.   (Sent. Agmt. 5).   Significantly, with respect to the amount of heroin involved, Rodriguez confirmed that he had discussed the agreement with his attorney and fully understood it before signing it.   (Sen. Tr. 4-6).

Thus, it is clear that Rodriguez was aware of the drug amount attributed to him, and that he agreed to be sentenced based on that amount.   This argument is therefore rejected.

    2.   **Apprendi**

Rodriguez argues that the Court erred by not allowing a jury to determine, beyond a reasonable doubt, the drug quantity attributable to him.   While not entirely clear, it appears that defendant is making an Apprendi argument.   He asserts that "[t]he court erred in not determining drug quantity attributable to or foreseeable to movant beyond a reasonable doubt."   (Def. Mot. at 15).   I assume Rodriguez is arguing that the issue of drug quantity should have been decided by a jury under a reasonable doubt standard.   This argument fails.

In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

There cannot be an Apprendi violation here, however, because Rodriguez's sentence was well below the maximum sentence. Apprendi only applies to enhanced sentences that exceed the applicable statutory maximum.   See Apprendi, 530 U.S. at 490.

- 11 -

Here, the statutory maximum was life imprisonment, and I sentenced defendant to only 90 months.  <u>Apprendi</u> is therefore inapplicable, and defendant cannot obtain relief on that ground.

### 3.  <u>Error in Sentencing Guideline Calculation</u>

Defendant further argues that the Court erred by determining defendant's sentencing guideline range based on the stipulated offense rather than the charged offense.  (Def. Mot. at 15) (citing <u>United States v. Guerrero</u>, 863 F.2d 245, 248 (2d Cir. 1988)).  Under the sentencing agreement, defendant is responsible for between "3 and 10 kilograms" (Sent. Agmt. 1), while the indictment charged that defendant was responsible for more than 1 kilogram and at least 3 kilograms of heroin. (Indict. 1).

Again, defendant's argument fails because: (1) the sentencing agreement specified that the amount was between 3 and 10 kilograms (Sent. Agmt. 1); (2) at sentencing, I asked whether defendant understood the agreement, and he responded affirmatively (Sent. Tr. 4); and (3) at sentencing, I specifically stated that the amount was between 3 and 10 kilograms -- and defendant made no objection to being sentenced based on this amount.  (<u>Id.</u> at 5).  Moreover, there is no inconsistency, for "between 3 and 10 kilograms" is indeed "at least 3 kilograms."  Thus, defendant's objection on this ground is rejected.

4.   **Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) petitioner was prejudiced by counsel's deficient performance.  See Strickland v. Washington, 466 U.S. 668, 686-88 (1984).  When applying the Strickland test, "judicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.  "The court's central concern is not with 'grad[ing] counsel's performance,' . . . but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'"  United States v. Aguirre, 912 F.2d 555, 561 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696).

Where a defendant challenges a guilty plea on the basis of alleged ineffective assistance of counsel, to satisfy the second prong of the Strickland test the defendant must show that, but for counsel's error, there is a reasonable probability that he would not have pled guilty.  Hill v. Lockhart, 474 U.S. 52, 59 (1985); Tate v. Wood, 963 F.2d 20, 23-24 (2d Cir. 1992).

Here, Rodriguez asserts ineffective assistance of counsel on four grounds.  He argues that: (1) his attorney should have objected when he pled guilty without the Court having determined the actual drug quantity attributable to him; (2) his

attorney should have objected, based on <u>Apprendi</u>, to the determination of drug quantity attributable to him; (3) his attorney should have objected to the calculation of his sentencing range based on 3 to 10 kilograms; and (4) his attorney should have requested a downward departure for his concession as to deportation.

Defendant's first three grounds for ineffective assistance are all rejected for the reasons discussed above.  The arguments all lack merit, and thus defendant cannot show that he was prejudiced by counsel's failure to object on those grounds. These arguments are therefore insufficient to support an ineffective assistance claim under <u>Strickland</u>.  466 U.S. at 686-88.

Defendant's fourth argument regarding counsel's failure to request a downward departure for his concession of deportation is also without merit.  In the sentencing agreement, defendant agreed that a downward departure was not warranted, and further, that he would not seek such a departure or adjustment.  (Sent. Agmt. at 3).  Courts have upheld such agreements.  <u>See</u> <u>United States v. Braimah</u>, 3 F.3d 609, 611-12 (2d Cir. 1993) (citations omitted).  Here, defendant waived his right to request a downward departure; he cannot now assert that counsel was ineffective for failing to argue for a downward departure based on his willingness to concede deportation.  Rodriguez's claim is therefore rejected.

- 14 -

## CONCLUSION

For the reasons set forth above, Rodriguez has failed
to demonstrate any basis for relief under 28 U.S.C. § 2255.  The
motion is therefore denied.  Because Rodriguez has not made a
substantial showing of the denial of a constitutional right, I
decline to issue a certificate of appealability.  See 28 U.S.C.
§ 2255 (1996) (as amended by the Antiterrorism and Effective
Death Penalty Act).  I certify pursuant to 28 U.S.C. § 1915(a)(3)
that any appeal taken from this decision and order would not be
taken in good faith.

The Clerk of the Court shall close this case.

SO ORDERED.

Dated:    New York, New York
          April 24, 2007

                                    DENNY CHIN
                                    United States District Judge

- 15 -